UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff/Respondent, | ) ) ) | No. 7:18-CR-14-REW |
| v. | ) ) | No. 7:19-CV-126-REW |
| ERIC HERNANDEZ, | ) ) | OPINION & ORDER |
| Defendant/Movant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On December 6, 2019, Hernandez, a federal inmate, filed a *pro se* notice of appeal approximately eleven months after judgment entry. *See* DE 18 (Judgment & Conviction); DE 19. On December 10, 2019, the Court alerted Hernandez to the untimeliness of his filing (if construed as an appeal)[1] and ordered him to clarify the relief sought. DE 23. The Court further directed the Clerk to send Hernandez a blank § 2255 form. *Id.* On December 26, 2019, the Clerk docketed Hernandez's timely motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. *See* DE 24. The next day, the Court reviewed the motion and determined that it was too vague to allow for the required initial screening. *See* DE 26. The Court ordered supplementation and described some of the needed (but missing) information, including the relevant "BOP Program Statement" and how a violation of that statement could have tainted Hernandez's indictment. *See id.* On January 27, 2020, Hernandez complied and filed a supplemental brief in support of his § 2255 motion.

---

[1] The Sixth Circuit later dismissed Hernandez's appeal, *sua sponte,* as untimely. DE 27.

1

The Court has conducted its preliminary review under Rule 4 of the Rules Governing Section 2255 Proceedings. Based on this initial consideration, "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b). Upon review of Hernandez's motion and supplemental memorandum, the Court perceives no colorable ineffective assistance of counsel claim and summarily dismisses the motion.[2]

I.   BACKGROUND

On November 8, 2018, the Court accepted Hernandez's guilty plea—pursuant to a plea agreement (DE 13)—to the sole count of the indictment (DE 1), possessing contraband in prison. *See* DE 12 (Minute Entry). In the plea agreement, Hernandez admitted to possessing a twenty-four-inch piece of sharpened metal (a shank), designed and intended to be used as a weapon and which Hernandez had hidden inside a light fixture in his cell. DE 13 ¶ 3. Per the agreement, Hernandez also "waive[d] the right to attack collaterally the guilty plea, conviction, and sentence" except for claims of ineffective assistance of counsel. *Id.* ¶ 8. The Court entered judgment on January 2, 2019, and sentenced Hernandez to a term of imprisonment of twenty-one months, to be served consecutively to the sentence imposed in Dkt. No. 4:16-CR-109 (D. Okla.). DE 18. Hernandez now seeks to vacate his conviction and sentence. *See* DE 28.

Hernandez's central arguments appear to be that the BOP's handling of the internal investigation violated Hernandez's due-process rights and that his counsel was ineffective for failing to seek suppression of the evidence and offering incorrect advice. *See id.* at 3. Hernandez criticizes the guidance that preceded his guilty plea: counsel evidently told Hernandez that the

---

[2] The Court reaches this result bearing in mind the liberal construction afforded to "vague and conclusory" *pro se* filings. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) ("The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition 'to encompass any allegation stating federal relief.'")

outcome of the BOP investigation foreclosed a defense in the criminal prosecution. *See id.* Hernandez maintains that there was at least one (unspecified) defense available to him and that he was deprived of due process and effective counsel as a result. *See id.*

Hernandez's argument begins with the distinction between internal prison discipline and external prosecution. *See id.* Hernandez relies on BOP Program Statement § 541.5(b), which directs an investigating officer to suspend investigations when incidents may involve criminal prosecution and prohibits investigating officers from questioning an inmate until the relevant agency releases the incident report. *See* DE 28 at 2. Movant contends that, during this period of suspension, he "had a due process right to be free from institutional investigation as well as a right to know" about the possibility of prosecution. *See id.* at 3. Hernandez seemingly argues that the internal investigation was not suspended (as the Program Statement dictates) and that his counsel was ineffective for failing to seek to suppress "statements, findings, or evidence from the violative BOP proceed[ing]." *See id.* at 4.

According to Hernandez, BOP's investigation involved UDC (Unit Discipline Committee) review and a DHO (Discipline Hearing Officer) hearing, which suggested that any external investigative agency had already released the incident report. *Id.* He maintains that the report was never released and that "the entire proceedings should have never taken place." *Id.* The program statement provides that "UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution." BOP Program Statement § 541.7(c). Hernandez believes that the BOP incorrectly handled the investigation as though "it would remain internal." *See* DE 28 at 4–5. He observes that he "received multiple sanctions" and reiterates that he was never told about the impending prosecution. *Id.* at 5.

3

Hernandez then focuses on the plea agreement, which he deems invalid because of (unspecified) "violative findings" from the BOP investigation. *See id.* Hernandez claims that he "clearly stated that the weapon was not his." *See id.* Hernandez argues that he did not fight the allegation because he was not informed "about the proceedings that were to take place." *See id.* He represents that his plea was influenced by "the findings by the DHO officer," but that he later learned the BOP had violated his due-process rights. *See id.* at 5–6.

## II. ANALYSIS

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). An alleged deprivation of the constitutional right to counsel falls within the first category. *Pough v. United States*, 442 F.3d 959, 96 (6th Cir. 2006). But, "a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars [§ 2255] relief." *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Here, Hernandez's plea agreement forecloses all § 2255 claims except those based on ineffective assistance of counsel. *See* DE 13 ¶ 8.

The Court conducts an initial review of § 2255 motions:

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b). "The statute requires the district court to 'grant a prompt hearing' on the motion '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *MacLloyd v. United States*, 684 F. App'x 555, 556 (6th Cir. 2017); *see* 28

4

U.S.C. § 2255(b). "A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'" *Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) (quoting *Sanders v. United States*, 83 S. Ct. 1068, 1079 (1963)). "[T]he preferred practice in dismissing a section 2255 motion in accordance with Rule 4(b) is to enumerate the issues raised by the movant, specify that each is being summarily dismissed in accordance with the rule, and explain the legal grounds for that action." *Tate v. United States*, 803 F.2d 722, 1986 WL 17720, at *1 (6th Cir. 1986) (Table).

### A. Ineffective Assistance of Counsel

"A defendant must prove two elements to establish ineffective assistance of counsel: his attorney's performance was deficient, and the deficiency prejudiced him." *Greenup v. United States*, 401 F.3d 758, 766–67 (6th Cir. 2005). This two-part "test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985). On the first prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2065. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 106 S. Ct. at 370. The defendant bears a heavy burden to "show that his lawyer's deficiency was a decisive factor in his decision to plead guilty." *Pough*, 442 F.3d at 966.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United*

5

*States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001). "Conviction and sentence following a plea of guilty are based entirely upon the plea and not upon any evidence which may have been improperly acquired by the prosecuting authorities." *Reed v. Henderson*, 385 F.2d 995 (6th Cir. 1967). "[A]fter the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486 (6th Cir. 2012). When a defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 106 S. Ct. at 369.

The first step of the *Strickland* inquiry asks whether counsel's performance was objectively deficient and whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 104 S. Ct. at 2066. "[F]ailure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 106 S. Ct. 2574, 2587 (1986). "A claim that counsel ineffectively failed to raise a claim at trial or on appeal requires a threshold showing that the claim was meritorious." *United States v. Cole*, Civ. No. 00-1166; Crim. No. 97-10036, 2000 U.S. Dist. LEXIS 23880, at *7 (W.D. Tenn. Dec. 13, 2000); *see Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) ("Trial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance.").

In accordance with the Fifth Amendment right against self-incrimination, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 86 S. Ct. 1602, 1612 (1966). To protect the privilege, *Miranda* requires that a person subject to custodial interrogation "must

be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* After an adequate warning, a person may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Id.* The remedy for a *Miranda* violation is exclusion of the unwarned statement. *Chavez v. Martinez*, 123 S. Ct. 1994, 2013 (2003).

Here, Hernandez's filing does not approach a threshold showing of ineffective assistance of counsel under *Strickland*. To begin, the only identified acts or omissions under review are counsel's failure to file a suppression motion and counsel's advice that Hernandez had no viable defense to the contraband charge. The objective reasonableness of counsel's decision not to seek suppression depends on the merits of the phantom argument; counsel need not have filed a groundless motion. *See Brown*, 231 F. App'x at 475. On this score, Hernandez's showing falls woefully short. Importantly, Hernandez never identifies precisely *what* he believes should have been suppressed. *See* DE 28 at 4 (referring vaguely to "statements, findings, or evidence"). There is no general constitutional right to suppression. Although it is conceivable that Hernandez sought to suppress an inculpatory statement under *Miranda*, he does not allege that he was subject to custodial interrogation by an investigating officer (a *Miranda* predicate). *See Howes v. Fields*, 132 S. Ct. 1181, 1192–93 (2012) (discussing factors that bear on whether inmate was subject to custodial interrogation for *Miranda* purposes). Nor does he claim that any investigator failed to advise him of his *Miranda* rights or even that he made an unwarned incriminating statement at all. To the contrary, Hernandez asserts that he "clearly stated that the weapon was not his." *See* DE 28 at 5. Without any showing that Hernandez made an inculpatory statement within the scope of *Miranda*, Hernandez's allegations do not suggest that his counsel unreasonably failed to seek

suppression. The Court does not read Hernandez's motion to plausibly allege or even hint at another constitutional basis for suppression.

Additionally, Hernandez has not supported the (albeit unstated) conclusion that counsel was objectively unreasonable in advising him about his defenses (or lack thereof). Hernandez characterizes counsel's guidance on this point as "disheartening" and "misleading" but never describes the "one defense available" that "may or may not have prevailed." *See* DE 28 at 3. To the extent Hernandez depends on the unargued suppression motion as an example of counsel's deficient advice, that is unpersuasive for the reasons explained above. Immediately after his vague mention of a viable defense, Hernandez concludes that he was deprived due process and his right to counsel. *See id.* But, these are legal conclusions, not the kind of required factual assertions that would support an ineffective assistance claim based on counsel's deficient advice.

On the second *Strickland* prong, Hernandez fares no better. He argues that the proceeding would have "be[en] handled differently" if the government had not had the DHO findings. *See* DE 28 at 5. He further contends that, without these findings, he "would have had an opportunity to develop and build a reliable defense." *See id.* He claims not to have known "about the proceedings that were to take place" and that he was unduly prejudiced by his lack of knowledge. *See id.* However, Hernandez's guilty plea was not invalid merely because he (incorrectly) believed that he would not be prosecuted for possession of contraband; his prior understanding is not causally connected to the voluntariness of his plea. Nor does the inquiry depend on the decried prejudice from the unspecified DHO findings or evidence; it is the performance of counsel that matters.

Hernandez's assertions do not cast doubt on counsel's advice concerning the decision to plead guilty. That Hernandez, pre-indictment, may not have perceived the risk of criminal prosecution has little to do with the pre-plea advice of counsel, whose involvement began after the

initiation of criminal charges. *See* DE 7 (Minute Entry for Initial Appearance & Arraignment). By that point, counsel could not have mitigated the apparent persuasive force of the DHO outcome—at least not without a statement or evidence subject to suppression and an arguable suppression basis, which Hernandez does not suggest (as explained above). Moreover, Hernandez stops short of claiming that he would have gone to trial or demonstrating a "reasonable probability" of the same. *See Hill*, 106 S. Ct. at 370. For these reasons, even if Hernandez's counsel was objectively unreasonable, Movant has not explained how constitutionally adequate representation would have changed the outcome in his case.

A few notes about the process: First, Hernandez seems to argue that the BOP administrative finding influenced the result in federal court. The plea colloquy made plain to Hernandez that he had a jury trial right and that the United States would have the burden of convincing the jury of each element beyond a reasonable doubt. *See* DE 12 (Minute Entry). A BOP administrative finding would not have affected the federal trial right or process.

Further, the plea agreement referenced only the hard facts—Hernandez admitted under oath to hiding a shank in the light fixture of his cell. *See* DE 13 ¶ 3(b). Per the PIR, Hernandez was the lone occupant of the cell. *See* DE 20 ¶ 7. Notably the PIR does not reference the BOP investigation. *See id.* Likewise, the plea agreement did not mention or rely on any administrative BOP result. *See* DE 13 ¶ 3. Finally, the BOP program statement and regs simply impose a typical disciplinary sequence, acknowledging that a criminal investigation may interrupt or affect the timeline of some of the procedural steps. A criminal case does not foreclose prison discipline or vice versa. Hernandez supplies no facts regarding what he views as a suspect chronology.

The motion never reveals Hernandez's precise complaint, though a § 2255 movant must identify the full basis for a claim. *See* Rules Governing Section 2255 Proceedings, Rule 2(b)(1),

9

(2) (requiring the motion to specify "all the grounds for relief" and "the facts supporting each ground"). The Court finds nothing of merit, as to the suggested arguments, in the documents and the record pertaining to the plea, conviction, and sentence.

### B. Other Claims

As explained above, Hernandez signed a plea agreement that precludes him from seeking habeas relief for pre-plea constitutional violations. Nonetheless, the Court briefly addresses two other potential constitutional injuries suggested. First, Hernandez emphasizes BOP's deviation from its own policy concerning the timeline for internal discipline and external prosecution. But, Hernandez had no **due-process** right in BOP procedures for inmate discipline, so BOP's failure to follow these procedures (if shown) would not constitute a constitutional violation. "[P]rison regulation primarily designed to guide correctional officials in the administration of a prison" does not "confer rights on inmates." *Sandin v. Conner*, 115 S. Ct. 2293, 2299 (1995). "Therefore, an agency's failure to follow its own policies in a given instance does not of itself implicate due process rights." *Mohamed v. Streeval*, No. 0: 19-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019). Second, although Hernandez highlights the "multiple sanctions" he received, these pose no constitutional problem. "The Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008). Even if Hernandez's guilty plea did not bar these arguments, or even if he meant to argue that counsel was ineffective for not raising these claims, they are without merit.

### C. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 103 S. Ct. 3383, 3394 & n.4 (1983)). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003). The Court must "engage in a reasoned assessment of each claim." *Murphy v. Ohio*, 263 F.3d 466, 467 (2001).

Here, Hernandez has generically identified but not developed arguments supporting a violation of his constitutional rights. To the extent he attempts to allege a due-process violation, nothing in Hernandez's motion or supplemental brief sounds in due process. The possibility that BOP discipline preceded Hernandez's criminal prosecution, without more, does not run afoul of or even threaten any recognized due-process right. Reasonable jurists could not disagree on this point.

To reach a contrary conclusion on ineffective assistance, a court would have to compound hypotheticals: that Hernandez was subject to custodial interrogation; that he never received or waived his *Miranda* rights; that he made an incriminating statement that was used against him in prison discipline proceedings; and that he notified counsel about this potential Fifth Amendment violation to no avail. Absent even one of these factual allegations, reasonable jurists could not debate whether counsel unreasonably ignored a potential *Miranda* suppression issue of merit. Hernandez presents no other viable suppression argument, and no reasonable jurist could conclude

that failing to raise meritless issues constitutes *Strickland* ineffectiveness. Thus, there is no basis for a Certificate of Appealability.

## III. CONCLUSION

Accordingly, the Court **SUMMARILY DISMISSES** the motion (DE 24) and **DENIES** a Certificate of Appealability.

This the 30th day of March, 2020.

Signed By:
*Robert E. Wier*
United States District Judge